Bcjrket, J.
This case has been ably argued both orally and on briefs, and many cases cited to the effect, on part of plaintiff in error, that a recovery may be had against a city or county as upon an implied contract, independent of any statute, for value received and retained by such city or county; and on part of the defendant in error, to the effect that when the transaction is in violation or disregard of a statute in a material matter that no recovery can be had. We have no disposition to review or attempt to reconcile these cases. We regard them as having been correctly decided under the statutes and rules of decision in the particular locality, and under the peculiar circumstances of the respective cases.
Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes and decided cases, is, that to bind *420 the state, a county or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they 'have placed themselves. If the contract is executory^© action can be maintained to enforce it, and if executed on one side, no recovery can be had against the party of the other side.
Experience has shown that this policy is necessary to prevent abuses, and protect the public treasury from depletion by unscrupulous public officers. The abuses as to public printing had be- ■ come so flagrant as to induce section 2 of article 15 to be inserted into the present constitution of this state. That section is as follows: “The printing of the laws, journals, bills, legislative documents and papers for each branch of the general assembly, with the printing required for the executive and other departments of state, shall be let, on contract, to the lowest responsible bidder, by such executive officers, and in such manner, as shall be prescribed by law. ”
In line with the spirit of this section, statutes have been passed providing for the public letting of contracts after advertisement by municipalities and providing that contracts not so let shall be void; and this court has construed those statutes as absolving municipalities from all obligations as to contracts made, work done, or supplies furnished in violation or disregard of such statutes. City of Lancaster v. Miller, 58 Ohio St., 558; McCloud et al. v. Columbus, 54 Ohio St., 439; Ohio ex rel v. Yeatman, 22 Ohio St., 546.
*421 The manner of purchasing, contracting for, and erecting a bridge by county commissioners, is regulated and controlled by statute, and nothing-is left to inference.
Section 795, Revised Statutes, requires that before entering into a contract for the substructure of a bridge, the commissioners shall make or procure some competent architect or civil engineer to. make full, complete and accurate plans • therefor, working plans, accurate bills, showing the exact amount of all different kinds of materials to be used, and also complete specifications of the work to be done, and a full, accurate and complete esti-mate of each item of expense and the aggregate cost of the whole; but the commissioners may re-ceive from bidders on iron substructures the necessary plans and specifications therefor.
Section 796 requires the commissioners to determine ,the length and width of the ■ superstructure of a bridge, whether the same shall be single or double track, and requires them to advertise for proposals for performing the labor and furnishing the materials necessary in the erection of the bridge, and they may cause plans and specifications to be prepared or not, at their option, and they may receive bids or plans and specifications proposed by others, but in such case it must be stated whether there is any patent right upon such plan, or any part thereof. In the advertisement for the proposals the commissioners are required to invite bidders to bid for all or any part of the work or materials, and to state the time and place, when and where the bids will be opened, and at that time and place the bids must be publicly opened and read, and the contract awarded to the lowest and best bid *422 der, and the plans and specifications upon which the contract is awarded must be made a part of the contract, and kept on file in the office of the county-auditor.
Section 797 requires that the plans, drawings, representations, bills of materials, specifications of work and estimates as to the bridge, shall be submitted to the county commissioners, auditor and surveyor of the county, and if approved by a majority of them, a copy thereof shall be deposited with the auditor and safely kept in his office.
Section 798 requires that after the approval of such plans and specifications, etc., the county-auditor shall give public notice in two of the principal papers of the county of the time and place, when and where, sealed proposals will be received for performing the labor and furnishing the materials necessary for the erection of such bridge, and making a contract therefor; which notice shall be published weekly for four consecutive weeks next preceding the day named for the making of such contract. But when the estimated cost of a bridge is less than one thousand dollars, no public letting is necessary.
Section 799 requires the commissioners to award the contract for the substructure of a bridge to the lowest bidder who will give a good and sufficient bond for the faithful performance of his contract. All contracts exceeding one thousand dollars in amount, are - required to be submitted by the commissioners to the prosecuting attorney before any work is done or materials furnished, and if found by him to be in accordance with the law on that subject, and his certificate to that effect is endorsed thereon, then the contract shall have full force and effect, otherwise it shall be null and void.
*423 Section 800 provides that no contract for a bridge or bridge substructure shall be made at a price in excess of, the estimates so required to be made.
Section 850 requires a full record oí the board to be kept by its clerk, to be signed by the commissioners and certified by the president and clerk of the board, and to be received in evidence in all courts of this state.
By section 853 the commissioners are authorized at any regular or special session to make any necessary order or contract in relation to the building of any public bridge.
Section 878 requires that it shall be essential to the validity of every contract entered into by the commissioners or order made by them, that the same has been assented to at a regular or special session, and entered in the minutes of their proceedings by the auditor.
Section 894 provides that no claim against the county shall be paid otherwise than upon the allowance of the county commissioners upon the warrant of the county auditor, except when thé amount is fixed by law, or is authorized to be fixed by some other person or tribunal; but in no case are the commissioners allowed to disburse any public money.
Section 1024 makes it the duty of the auditor to issue warrants on the county treasurer, whenever the proper order or voucher is presented therefor.
To make a valid contract of sale by the bridge company to the county commissioners, and a valid contract of purchase of a bridge exceeding one thousand dollars by the commissioners, it is essen. tial that the foregoing provisions of the statute should be substantially complied with. This was *424 not done. The bridge in question amounted to over one thousand dollars. .One paragraph of the amended petition is fatal to the validity of the contract in question, viz.:
“That the county commissioners of said county, prior to purchasing and ordering from The Buchanan Bridge Company, of the materials aforesaid, did not give any public notice for public let-, ting of the contract for furnishing either material or labor for either the substructure or superstructure, or both, of the said bridge so to be built, and said commissioners never caused any memoranda or minute concerning- said purchase or order for said bridge material to be entered on the county commissioners’ journal, and no plans, specifications or estimates were made by the county surveyor, or other civil engineer or architect at the instance of the county commissioners for the said proposed bridge, and no contract for said bridge was ever submitted to the joint action of the county commissioners, county auditor and county surveyor, for approval by them, or a majority of them, nor to the prosecuting attorney of the county for his approval.”
Whether or not said pretended purchase of the bridge was made at a regular or special session does not clearly appear, but it would seem that if it had been made at any session, that fact would have been averred, followed by an averment that the auditor through mistake or otherwise failed to make a record of the action in fact had by the commissioners. As the amended petition stands it must be construed as conceding that the commissioners were not in either regular or special session when the supposed contract was made. '
*425 No notice of the proposed letting was published; no record of the contract was entered in the minutes of the commissioners by the auditor; no plans or specifications were ever made, approved or deposited with the auditor; no contract was ever' submitted by the commissioners to the prosecuting attorney for his approval, and none was ever approved by him.
These omissions are fatal to the validity of the contract, and by force of the above cited sections of the statute, the contract is totally void and imposed no obligation on either party to it.
The statutes are notice to the world as to the extent of the powers of the commissioners, and the bridge company is bound by that notice. It knew, and was bound to know, that the commissioners had no power to thus enter into a contract, and that a contract thus attempted to be entered into would be null and void and would not bind either party. • ■
It is necessary to so construe the statutes, in order to prevent the evils which induced the enactment of them. If such statutes could be evaded, there would always be found some public servants who would be ready and willing to join in transactions detrimental to the public, but favorable to themselves or some favored friend; and if public officers • should be ever so honest, some persistent agent or salesman would impose upon them, and obtain more out of the public treasury than is justly due. When the provisions of the statute are followed, and all is done openly and publicly, 'the public interests are best conserved, and even then there is often complaint to the effect that some one has been favored.
*426 The plaintiff seeing that the contract must be held to be void, seeks to recover on the ground that the commissioners received and retained the bridge, and promised to pay what it is reasonably worth.
The amended petition pleads an express contract, and where there is a subsisting express con. tract the recovery must be had thereon, and an action can not be had in such case upon an implied contract.
But it is urged that the express contract being void, the case is the same as if no contract had been made, and as if the commissioners had received and retained the bridge without an express contract.
The answer to this is that the commissioners have no power to bind the county in that way, and to allow such a course to be pursued would permit the evasion of the statutes. The contention in this case is not as to the amount to be paid for the bridge, but whether the county shall pay at all. To say that the commissioners accepted the bridge, and retained it, and promised to pay what it is reasonably worth does not aid the plaintiff. The commissioners cannot purchase supplies upon the reasonably worth plan, and no one is permitted to deal with them on that plan. The statute is the only authority and guide for both parties. 1 In this case both parties have acted in disregard of the statute, and the court will leave them where they have placed themselves, and refuse to aid either.

Judgment affirmed.